UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

GLEN ALAN SWEET,

                                    Plaintiff,

          v.                                          **DECISION AND ORDER**
                                                      10-CV-332S

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.


          1.     Plaintiff Glen Alan Sweet challenges an Administrative Law Judge's ("ALJ")

determination that he is not disabled within the meaning of the Social Security Act ("the

Act").  Plaintiff alleges that he has been disabled due to a series of ailments since June 1,

2005.  Plaintiff contends that his impairments render him unable to work.  He therefore

asserts that he is entitled to supplemental security income ("SSI") and disability insurance

benefits ("DIB") under the Act.

          2.     Plaintiff filed an application for SSI and DIB on November 27, 2006, alleging

disability since June 1, 2005.  The Commissioner of Social Security ("Commissioner")

denied Plaintiff's initial application and denied it again on reconsideration, whereupon

Plaintiff requested a hearing.  An administrative hearing was held by video conference on

June 10, 2009 before ALJ Ronald R. Bosch, at which Plaintiff testified.  The ALJ

considered the case *de novo*, and on July 16, 2009, issued a decision denying Plaintiff's

application for benefits.  Plaintiff filed a request for review with the Appeals Council, which,

on April 8, 2010, denied Plaintiff's request for review.  Plaintiff filed the current civil action

on April 22, 2010, challenging Defendant's final decision.[1]

3.      On September 28, 2010, Plaintiff filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.   The Commissioner followed suit a day later and filed his own motion for judgment on the pleadings.  Briefing on the motions concluded October 29, 2010, at which time this Court took the motions under advisement without oral argument.  For the reasons set forth below, the Commissioner's motion is granted and Plaintiff's motion is denied.

4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.      "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen,

---

[1]The ALJ's July 16, 2009 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

859 F.2d 255, 258 (2d Cir. 1988).    If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."    Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.    The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.    This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.   If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v.

Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.     Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.     In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since June 1, 2005 (R. at 11);[2] (2) Plaintiff's adjustment disorder with depressed mood, chronic open angle glaucoma, headaches, esophageal reflux, hepatitis B, intermittent cervicalgia, spinal stenosis at C6-7, occasional lumbago, chronic fatigue syndrome ("CFS"), and diverticulitis are "severe" impairments within the meaning of the regulations (id.); (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the criteria necessary for finding a disabling impairment under the regulations (id.); (4) Plaintiff retained the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c) (R. at 12);[3] and (5)

---

[2]Citations to the underlying administrative record are designated as "R."

[3]The ALJ found that Plaintiff was able to lift 50 pounds, carry 25 pounds, sit, stand, or walk for six hours, and had no pushing/pulling limitations.  (R. at 12.)  Additionally, the ALJ determined that Plaintiff's psychiatric impairments did not hinder his ability to understand, remember, or carry out detailed instructions, interact with supervisors or co-workers, tolerate moderate levels of stress, or adapt to

Plaintiff could perform his past relevant work as a manager, floor manager, and delivery driver (R. at 15).  Ultimately, the ALJ concluded that Plaintiff was not under a disability as defined by the Act from June 1, 2005, through July 16, 2009, the date of the ALJ's decision.  (R. at 16.)

10.   Plaintiff advances four challenges to the ALJ's decision.  First, Plaintiff argues that the ALJ erred by substituting his own opinion for that of competent medical expert opinion.   Second, he argues that the ALJ's RFC assessment is not supported by substantial evidence.  Third, he argues that the ALJ did not properly evaluate the severity of his CFS.  Fourth, Plaintiff contends that the ALJ erred in assessing his credibility.

11.   Plaintiff first argues that the ALJ played the role of doctor in interpreting objective medical findings.  This was error, Plaintiff asserts, because the ALJ was not competent to interpret raw medical data in the record.

12.   In searching the ALJ's opinion, this Court notes that the ALJ does cite to much "raw" medical data.  (See R. at 13-15.)  In so doing, however, the ALJ also cites to the opinions of various physicians in support of his decision.  For example, ophthalmologist records from October 13, 2006 show that Plaintiff was doing well on the drug Xalatan following laser eye surgery, had improved pressure and did "great" on his visual field test. (R. at 265.)  The ALJ relied on the consultative examination of Harbinder Toor, who examined Plaintiff on March 28, 2007, and the psychiatric evaluation of Thomas Ryan.  (R. at 251-258.)  The decision also contains other examples of the ALJ's consideration of other physicians' opinions, including that of Dr. M. Mohan.  While Plaintiff cites to various medical records in support of his challenge, he does not specify whose medical opinion the

changes in the work setting.  (Id.)

ALJ was ignoring in favor of his own.  Plaintiff's assertions that the ALJ based his decision on the medical data without it first being interpreted by a competent medical professional is thus conclusory, and need not be considered further.  Plaintiff's first challenge is rejected.

13.     Plaintiff's second argument is that the ALJ's RFC determination is not supported by substantial evidence.  Plaintiff asserts that no medical evidence supports the ALJ's RFC assessment.  Plaintiff further asserts that the totality of the medical evidence demonstrates Plaintiff's inability to sustain work in the full range of medium work.

14.     "The Commissioner defines RFC as a claimant's 'maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . 8 hours a day, for 5 days a week, or [on] an equivalent work schedule.'"  Sorensen v. Comm'r of Soc. Sec., No. 3:06 Civ. 554, 2010 WL 60321, at *8 (N.D.N.Y. Jan. 7, 2010) (quoting SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996)).  In making an RFC assessment, the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis."  SSR 96-8p, 1996 WL 374184, at *1; see also 20 C.F.R. §§ 404.1545(b)-(d), 416.945(b)-(d).  "The ALJ must specify which functions the claimant is able to perform and may not "simply mak[e] conclusory statements regarding [the claimant's] capacities."  Sorensen, 2010 WL 60321, at *8 (citing LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)).  The ALJ must consider all the relevant evidence in the record, "including the claimant's physical abilities, mental abilities, and symptoms, pain, and other limitations which could interfere with work activities on a regular and continuing basis."  Id. (citing 20 C.F.R. § 404.1545).  Then, after assessing the plaintiff's functional limitations and abilities, the ALJ categorizes the RFC into exertional levels of work, e.g., "sedentary, light, medium, heavy, and very heavy."  SSR 96-

8p, 1996 WL 374184, at *1.

15.    In the present case, the ALJ referenced the opinions of Doctors Toor, Ryan, and Mohan, in concluding that Plaintiff was capable of performing medium work. Medium work is defined as involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567. Dr. Toor found that Plaintiff had mild to moderate limitations in twisting, bending, and extending of the neck. (R. at 254.) Plaintiff was also to avoid heavy lifting because of his abdominal pain. (Id.) No other limitation was noted.

Dr. Ryan's prognosis of Plaintiff after psychiatric evaluation was "[f]air" and included that Plaintiff was able to follow and understand simple directions, perform simple tasks, and generally maintain attention and concentration, as well as learn new tasks, make adequate decisions, and relate with others. (R. at 257-258.) Dr. Mohan's psychiatric review, dated April 18, 2007, largely mirrors this diagnosis. Dr. Mohan noted only mild limitations in his activities of daily living, social functioning, and maintaining concentration, persistence, or pace. (R. at 237.) Dr. Mohan's notes show that Plaintiff's attention and concentration were intact. (R. at 239.) He retained the capacity to understand, remember, and carry out simple instructions, respond appropriately to supervision, use appropriate judgment to make simple work-related decisions, deal with changes in a routine work setting, and sustain attention and concentration. (Id.)

Although both Dr. Ryan and Dr. Mohan concluded that Plaintiff would have some difficulty dealing with stress (R. at 239, 257), the ALJ properly accounted for that limitation by determining that Plaintiff could only tolerate moderate levels of stress. See generally Cutler v. Astrue, No. 10-CV-663A, 2011 WL 3844163, at *6 (W.D.N.Y. Aug. 30, 2011) (substantial evidence supported ALJ's assessment that plaintiff could be employed in a job

7

with moderate amounts of stress where plaintiff had occasional limitations in his ability to understand, remember, and carry out detailed instructions); Cross v. Astrue, No. 08-CV-0862, 2010 WL 2399379, at *13 (N.D.N.Y. May 24, 2010) (substantial evidence supported ALJ's finding that plaintiff could work in a low-stress environment where physicians opined that she could understand and carry out simple instructions, maintain attention and concentration, but would have difficulty handling stress); McGriff v. Comm'r of Soc. Sec., No. 1:08-CV-0952 (LEK/VEB), 2009 WL 4042126, at *6 (N.D.N.Y. Nov. 16, 2009) (finding no evidence that plaintiff suffered substantial loss of ability to perform basic work-related activities despite physician's report noting difficulties dealing with stress); Schacht v. Barnhart, No. 3:02 CV 1483(DJS)(TPS), 2004 WL 2915310, at *10 (D. Conn. Dec. 17, 2004) (approving of ALJ's finding that plaintiff required low-stress environment involving few independent decisions based on tension-related headaches).

Plaintiff points to no countervailing medical opinion that should be given superior weight.  Plaintiff also does not explain how the ALJ's reliance on the opinions described above was improper.  Accordingly, this Court finds that the ALJ's RFC determination is supported by substantial evidence and rejects Plaintiff's second challenge.

16.    Plaintiff's third challenge is that the ALJ did not comply with SSR 99-2p in his discussion of Plaintiff's CFS.  Plaintiff argues that the ALJ did not properly assess the severity of this impairment, specifically the degree of fatigue Plaintiff experienced.

17.    SSR 99-2p describes CFS as "a systemic disorder consisting of a complex of symptoms that may vary in incidence, duration, and severity," which is "characterized in part by prolonged fatigue that lasts 6 months or more and that results in substantial reduction in previous levels of occupational, educational, social, or personal activities." 1999 WL 251998, at *1 (S.S.A. Apr. 30, 1999).  The "hallmark" of this disorder is:

> [T]he presence of clinically evaluated, persistent or relapsing chronic fatigue that is of new or definite onsent (i.e., has not been lifelong), cannot be explained by another physical or mental disorder, is not the result of ongoing exertion, is not substantially alleviated by rest, and results in substantial reduction in previous levels of occupational, educational, social, or personal activities.

Id.

Once an ALJ determines that a claimant with CFS has a medically determinable impairment, he must consider that claimant's supporting symptoms in deciding whether an impairment is severe. Id. at *4. Those impairments found severe must then be considered as part of an individual's RFC. Id. An ALJ's failure to correctly apply SSR 99-2p where a plaintiff suffers from CFS is grounds for remand. See Persico v. Barnhart, 420 F. Supp. 2d 62, 73 (E.D.N.Y. 2006).

18.     Here, the ALJ determined that Plaintiff's CFS did constitute a severe impairment. (R. at 11.)  But, in considering Plaintiff's testimony, the ALJ did not find his description of the severity of his symptoms believable because it was not supported by evidence in the record. (R. at 15.)  Plaintiff cites to no medical evidence which identifies other symptoms of CFS, and it is thus unclear what aspect of the ALJ's decision the Plaintiff is challenging.  To the extent he argues that the ALJ improperly minimized the severity of his fatigue based on Plaintiff's testimony, that argument is addressed in Plaintiff's fourth challenge, relating to credibility, and will not be considered here. Moreover, as already discussed, the ALJ's RFC assessment was supported by substantial evidence.  Accordingly, this Court concludes that although Plaintiff is correct that, pursuant to SSR 99-2p, CFS can constitute the basis for a finding of disability, Plaintiff has not established that this ruling was improperly applied in the present case. See Persico, 420 F. Supp. 2d at 73 (remanding where ALJ failed to acknowledge medical findings and

laboratory reports establishing CFS).[4]

19.     Plaintiff's fourth challenge is that the ALJ improperly assessed his subjective complaints. According to Plaintiff, his subjective symptoms were entitled to great weight for being supported by objective medical evidence.  Further, the ALJ was required to comply with 20 C.F.R. § 404.1529(c) and SSR 96-7p, and explicitly consider various factors, which his decision omitted.

20.     In addition to examining a claimant's subjective medical history, an ALJ will consider other factors in assessing a plaintiff's credibility, such as (i) plaintiff's daily activities; (ii) location, duration, frequency, and intensity of pain and symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness and side effects of any medications taken to alleviate the pain and symptoms; (v) treatment other than medication; (vi) any measures used to relieve the pain or other symptoms; and (vii) other factors concerning functional limitations and restrictions due to pain and symptoms.  20 C.F.R. § 404.1529(c)(3).  However, "[f]ailure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are 'sufficiently specific to conclude that he considered the entire evidentiary record in arriving at his determination.'" Wischoff v. Astrue, No. 08-CV-6367, 2010 WL 1543849, at *7 (W.D.N.Y. Apr. 16, 2010) (quoting Delk v. Astrue, No. 07-CV-167-JTC, 2009 WL 656319, at *4 (W.D.N.Y. Mar. 11, 2009)).

---

[4]The Commissioner further argues that Plaintiff's argument must be rejected on the ground that the record does not even support a diagnosis of CFS.  (Def.'s Reply 4, Docket No. 8.)  Plaintiff does not respond to this argument and this Court does not reach it, save to note that Plaintiff's memorandum lists only evidence of Plaintiff's subjective complaints, which would not, in themselves, suffice for a finding of disability.  See Ginsberg v. Astrue, No. 05 CV 3696, 2008 WL 3876067, at *11 (E.D.N.Y. Aug. 18, 2008) (noting that "[a]lthough a CFS diagnosis can be based on an individual's reported symptoms once other possible causes for the symptoms have been ruled out, reported symptoms alone are insufficient for a determination of disability under the Act").

21.     This Court has found substantial evidence in support of the ALJ's RFC assessment.  Although Plaintiff's memorandum cites to a number of medical test results, none of these citations are to a medical opinion that even remotely supports symptoms of a severity described by Plaintiff.  At the June 10, 2009 hearing, in response to the ALJ's questions concerning Plaintiff's RFC, Plaintiff responded as follows:

| | |
|---|---|
| ALJ: | All right, Mr. Sweet with respect to sitting, over the course of an eight-hour day from the time you have breakfast to the time you have dinner during that interval of eight hours how much time is it fair to say on average that you actually sit? |
| Plaintiff: | In an eight-hour day I would say maybe 20 minutes. |
| ALJ: | Twenty minutes. |
| Plaintiff: | I don't -- I lay down.  I don't sit at home. |
| ALJ: | How much time do you spend standing during those eight hours? |
| Plaintiff: | In an eight-hour time maybe 20, 25 minutes in eight hours.  I really don't spend much time out of bed. |
| ALJ: | And what about walking during that eight-hour period? |
| Plaintiff: | Maybe five, 10 minutes.  I just walk from like my bedroom to the living room or kitchen or bathroom. |
| ALJ: | What do you do during that eight-hour period? |
| Plaintiff: | I'm in bed.  I'm just laying in bed. |

(R. at 35-36.)  Concerning his ability to push and pull, Plaintiff simply stated "I can't because of my stomach and my neck."  (R. at 38.)  Plaintiff also testified that he cannot climb stairs, ladders, stoop, or crawl.  (Id.)  Asked what environmental conditions would prevent him from working, Plaintiff positively responded that exposure to dust, odors, fumes, and gas; extreme cold; extreme heat; vibrations; noise; changes to temperature or humidity; heights; and moving mechanical parts or machinery would all act to preclude him from working in a position.  (R. at 39-40.)

In contrast to such crippling impairments, the medical evidence put forth in Plaintiff's memorandum shows only, for example, that an x-ray of his cervical spine from May 1, 2006 showed mild degenerative changes.  A CT scan of his abdomen on May 19, 2006 similarly showed only minimal sigmoid diverticulosis.  Plaintiff lists other examples, but these follow

the same general pattern of being almost completely unrelated to the inabilities he testified to at the hearing.  Far from supporting his subjective complaints, these medical results actually bolster the physicians' opinions on which the ALJ relied to find Plaintiff's testimony not credible, and Plaintiff not disabled.  Having reviewed the record and the hearing testimony, the ALJ's credibility determination evinces no error.  Plaintiff's fourth challenge is thus rejected.

22.    After carefully examining the administrative record, this Court finds that substantial evidence supports the ALJ's decision in this case, including the objective medical evidence and medical opinions contained therein.  This Court is satisfied that the ALJ thoroughly examined the record and afforded appropriate weight to all of the medical evidence in rendering his decision that Plaintiff is not disabled within the meaning of the Act.  Finding no reversible error, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking similar relief.


IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 5) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 4) is DENIED.

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated:   March 28, 2012
          Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court